IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DEBORAH RUFFNER                                                                PLAINTIFF

v.                              Civil No. 12-2044

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                 DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Deborah Ruffner, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff filed her application for SSI on May 30, 2006, alleging an onset date of April 1, 2003, due to carpal tunnel syndrome ("CTS"), osteoarthritis in the knees and ankles, post traumatic stress disorder ("PTSD"), bipolar disorder, mental retardation, and poor vision in the left eye. Tr. 37, 54, 84-87, 114, 122-123, 148, 156. After this Court remanded the Commissioner's prior decision denying benefits on April 16, 2010, the Administrative Law Judge ("ALJ") held a supplemental hearing on July 19,. Tr. 292-328, 485-511.

At the time of the supplemental hearing, Plaintiff was 43 years old , possessed a high school education. Tr. 118. Plaintiff had past relevant work ("PRW") experience as a laborer and a home health aide. Tr. 19, 115, 132-139, 163.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On November 16, 2011, the ALJ found Plaintiff's osteoarthritis, decreased vision in the left eye, mild CTS, and depressive disorder to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 276-279. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except

> the claimant cannot perform work requiring excellent vision, but can avoid normal hazards in the workplace and can distinguish between shapes and colors of objects such as screws, nuts, and bolts; can frequently do rapid, repetitive flexion and extension of the wrists; and can frequently finger and handle. Further, the claimant is limited to work where interpersonal contact is incidental to the work performed; where the complexity of the tasks is learned and performed by rote, with few variables and little judgment required; and where supervision required is simple, direct, and concrete.

Tr. 280. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as a poultry production worker, production line assembler, and hotel/motel housekeeper. Tr. 290.

Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 11, 14.

## II. **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).

"The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

Records indicate that Plaintiff was treated for bilateral wrist pain during the relevant time period. On June 20, 2006, Plaintiff complained of bilateral wrist pain. Tr. 263. She reported An examination revealed bilateral wrist tenderness and nervousness. Plaintiff was diagnosed with bilateral wrist pain/osteoarthritis and prescribed Prilosec. Tr. 263.

On August 15, 2006, Plaintiff underwent a general physical examination with Dr. William Swindell. Tr. 218-226. Plaintiff complained of carpal tunnel syndrome, among other complaints. She reported burning pain in her hands that radiated into her shoulders. Plaintiff stated she had never actually been diagnosed with carpal tunnel syndrome or even undergone testing for it. She had merely diagnosed herself. However, Dr. Swindell noted that she did have symptoms that might be suggestive of carpal tunnel. However, the pain seemed to encompass her whole hand, not just the median nerve. A physical examination revealed no range of motion limitations, muscle spasm, joint abnormalities or

4

deformities, muscle weakness, or atrophy. She could hold a pen and write; touch fingertips to palms; grip 50% with the right and 70% with the left; oppose thumb to fingers; and, pick up a coin although difficulty gripping was noted. Dr. Swindell diagnosed her with pain in the right wrist that could be carpal tunnel, but he was not convinced it was and osteoarthritis. He opined that the wrist pain and osteoarthritis were mildly limiting. However, he did not define "mildly."

Initially, the ALJ dismissed Dr. Swindell's determination that Plaintiff had only a 50% grip strength in her right hand and 70% grip strength in her left, stating that there was no documentation of testing undertaken to establish these limitations. On remand, he was directed to recontact Dr. Swindell for clarification of these findings. *See Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (social security hearing is non-adversarial proceeding, and ALJ has duty to develop record fully; duty may include seeking clarification from treating physicians if crucial issue is undeveloped or underdeveloped); *Garza v. Barnhart*, 397 F.3d 1087, 1089-90 (8th Cir. 2005) (per curiam) (ALJ's duty to develop record fully and fairly exists even when claimant is represented by counsel). On remand, it appears that an RFC assessment was forwarded to Dr. Swindell, but the assessment was not completed. And, the record does not make clear why the assessment was not completed, nor does it indicate that the ALJ followed-up with Dr. Swindell to determine his reason for not completing the assessment. Tr. 472-482. Given that the ALJ was directed to recontact Dr. Swindell, we find it concerning that the record documents no such contact, aside from an RFC assessment being mailed to him. The ALJ did, however, order a second general physical exam and a neurological consultative exam.

On May 3, 2011, Plaintiff underwent a general physical exam with Dr. Van Hoang. Tr. 486-490. She complained of CTS with bilateral hand numbness and tingling sensations and polyarthralgia in the ankles and wrists for 15 years. An examination revealed a normal range of motion in all joints, muscle weakness with dorsiflexion in the ankles bilaterally, a bradykinetic uncoordinated gait, bilateral non-

pitting edema in the legs bilaterally, and normal grip strength. Dr. Hoang opined that Plaintiff could hold a pen and write, touch fingertips to palm, oppose thumb to palm, pick up a coin, stand/walk without assistive devices, walk on heel and toes, and squat and arise from a squatting position. He diagnosed her with polyarthralgia of the wrists and CTS, by history. Dr. Hoang then assessed her with "moderate physical limitation for work," but provided no explanation of his findings.

On September 7, 2011, Plaintiff underwent a neurological evaluation with Dr. David Oberlander. Tr. 509-511. She complained of pain in both hands with numbing and tingling in the early morning, occasional shaking in her hands, and dropping things. An examination revealed mild weakness in the hands; reduced sensory appreciation to light touch in the right and left index fingers; and, positive Tinel and Phalen Sign at the wrist bilaterally. Dr. Oberlander assessed Plaintiff with what appeared to be an element of CTS producing weak grips in both hands and sensory deficits. Dr. Oberlander did not, however, explain how these limitations would impact Plaintiff's ability to finger and handle.

After reviewing the entire record in this case, we find that remand is again necessary to provide clarification regarding the limitations imposed by Plaintiff's probable CTS. As previously noted, Dr. Oberlander failed to explain how Plaintiff's weak grip and sensory deficits would impact her ability to handle and finger on a regular basis. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (holding that Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist). And, although Dr. Hoang concluded that she would have "moderate" work limitations, he failed to complete an RFC assessment. Additionally, we are still left with Dr. Swindell's unexplained assessment of significantly decreased grip strength. Because RFC is a medical question, the ALJ's RFC must be based on medical evidence that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). Since the evidence does not specify how Plaintiff's wrist

and hand related limitations would impact her ability to work, remand is necessary for further development of the record.

We note that repetitive tasks that require bending of the wrists or *grasping with the hands*, including typing, cutting, sewing, playing a musical instrument, overuse of small hand tools, and use of vibrating tools are factors that can contribute to the development of CTS. *See* PHYSICIAN'S DESK REFERENCE, *Carpal Tunnel Syndrome*, http://www.pdrhealth.com/diseases/carpal-tunnel-syndrome (Last accessed February 25, 2013). It seems reasonable that an individual who has suffers from CTS might also need to avoid these activities, which do not just involve the rapid and repetitive use of their wrists, in order to prevent further complications. Accordingly, on remand is advised to consider this information. Further, the ALJ appears to penalize the Plaintiff for not having undergone any objective tests, such as x-rays or MRIs. However, the record also reveals that she was obtaining her treatment through the Good Samaritan Clinic. As this is a Clinic offering low cost or no cost medical services to the community, we believe that the ALJ should have considered the possibility of financial hardship prior to dismissing Plaintiff's complaints based on a lack of "objective" testing. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992) (holding that economic justifications for lack of treatment can be relevant to a disability determination). We also note that physical exams revealing limitations also constitute "objective" evidence, upon which doctors will frequently base a diagnosis. The lack of x-rays, CT scans, and MRIs does not negate the findings of a physical exam. Therefore, the ALJ is directed to consider the results of said exams on remand.

## V.     **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

7

    DATED this <u>27th</u> day of February 2013.

                                          <u>/s/ *J. Marschewski*</u>
                                          HON. JAMES R. MARSCHEWSKI
                                          CHIEF UNITED STATES MAGISTRATE JUDGE